## INDEPENDENT CONTRACTOR AGREEMENT

This Independent Contractor Agreement (the "Agreement") is made and entered on February ___, 2020 (hereinafter the "Effective Date"), between Tactacell, LLC (the "Contractor") and Deer Management Systems, LLC (the "Company").

In consideration of the promises, rights and obligations set forth below, the parties hereby agree as follows:

1. **Term.** The term of this Agreement shall begin on the Effective Date and continue until terminated as set forth in Section 7 this Agreement.

2. **Services.** The Contractor will use commercially reasonable efforts provide the following services:

    i. Examine market trends in the defined territories;

    ii. Establish sales strategies;

    iii. Meet with potential clients, present products, manage complaints, and ensure follow ups;

    iv. Participate at different representation activities (trade fairs, shows, company visits, etc.);

    v. Analyze sales reports from independent sales representatives;

    vi. Accompany independent sales representatives for client visits, when necessary for retention of existing customers.

    The above are hereinafter known as the "Services." The Contractor shall take reasonable direction from CEO or as reasonably directed by Company's Board of Directors. Additional services or amendments to the Services described above may be agreed upon between the parties in writing.

    The Contractor shall obtain Company's written consent prior to subcontracting any part of the Services, authorizing the subcontracting, or replacing a subcontractor (which consent shall not be unreasonably withheld). In the case of subcontracting, the Contractor shall ensure, unless otherwise stated in writing by Company, that the subcontractor is bound by conditions substantially in accordance with those of the Agreement.

3. **Exclusivity.** The Contractor is forbidden, during the duration of this Agreement, and for two (2) years following the termination of agreement by either party, to provide competing services or sell competing products, whether directly or indirectly, in any capacity with an individual, intermediary, or company that provides products and/or services that directly compete with the products and services offered by the Company (a "Competitor"). Company acknowledges that Contractor is currently an equity holder in Wildgame Innovations. Solely for the purpose of the exclusivity and non-compete covenants herein, the terms "products" and/or "services" shall mean "trail cameras or cellular connected devices."

4. **Commission.** The Contractor will receive up to three percent (3%) of the Company's Net Profit each year. The rate will begin at one percent (1%) as long as Contractor's services are restricted by way of Contractor's "endorsement agreement" agreement with Plano Synergy Holding ("Plano"). The rate will change to three percent (3%) at the earlier of: (i) December 31, 2021 or (ii) such date that Contractor provides reasonably adequate documentation that Plano's endorsement agreement is no longer valid. Company has the right to terminate this agreement if contractor is not free to

perform all duties set forth in Section 2 of this Agreement by December 31, 2021 (Contractor Commissions to such point shall remain due). Contractor is entitled to three percent (3%) of the Net Profit of the Company provided all material terms of this Agreement are satisfied. Contractor Commission shall be paid to Contractor no fewer than once per year and shall include a statement detailing the Company's gross profits, costs, and net profits for said period. As used herein, the term "Net Profit" means the difference between Gross Receipts (hereinafter defined) and Gross Expenses (hereinafter defined). As used herein, the term "Gross Receipts" means the any and all amount of monies earned by Company (or credited to Company). As used herein, the term "Gross Expenses" means any and all reasonable, actual, direct, out-of- pocket expenses paid or incurred by Company (paid to third parties except as otherwise set forth herein) including any and all taxes paid.

5. **Additional Incentives**. Contractor will be given first right of refusal on any stock offering Company may make available to anyone outside the initial and original stockholders. Once Company provides Contract with the stock offering details (i.e. price, percent available, etc.) Contractor will have 30 days to notify Company of Contractors decision to exercise or pass on Contractors first right of refusal.

6. **Relationship**. The Contractor will provide the Services to the Company as an independent contractor and not as an employee. Accordingly, the Contractor agrees that as an independent contractor, the Contractor will not be qualified to participate in or to receive any employee benefits that the Company may extend to its employees.

   The Contractor is allowed to provide services to other clients, so long as such other clients do not offer products and services that directly compete with the Company and its products and services. This non-competition restrictive covenant is in effect for the duration of this Agreement and for two (2) years following the termination of this Agreement.

7. **Termination**. This Agreement may be terminated by Contractor, upon written notice to the Company not less than sixty (60) days in advance. Notice shall be deemed to have been sufficiently given either when served personally or sent by registered or certified mail return receipt requested addressed to the parties at their last known addresses. Any and all restrictive covenants associated with confidentiality, non-solicitation, and non-competition shall remain in full force and effect after termination. This Agreement may be terminated by Company only (i) for "Cause" (as defined herein) or (ii) non-performance of duties set forth in Section 2 of this Agreement. Termination of Contractor for Cause requires no notice period and the Agreement, but for those portions intended to survive beyond its termination, shall terminate immediately upon written notification.

   This Agreement may be terminated for Cause (as defined below) by the Company if the Contractor (i) materially violates the provisions of the Non-Competition provision or the Confidentiality provision between the Company and Contractor, (ii) is convicted of any crime involving misuse or misappropriation of money or other property of the Company or any felony; (iii) exhibits repeated willful or wanton failure or refusal to perform his duties in furtherance of the Company's business interest or in accordance with this Agreement, which failure or refusal is not remedied by the Contractor within thirty (30) days after written notice from the Company providing details on such failure or refusal; (iv) commits an intentional tort against the Company, which materially adversely affects the business of the Company; (v) commits any flagrant act of dishonesty or disloyalty or any act involving gross moral turpitude, which materially adversely affects the business of the Company; or (vi) exhibits immoderate use of alcohol or drugs which, in the opinion of an independent physician selected by the Company and Contractor, impairs the Contractor's ability to perform his duties hereunder (all of the foregoing clauses (i) through (vi) constituting reasons for

DMS 000021

termination for "Cause"), provided that unsatisfactory business performance of the Company, or mere inefficiency, or good faith errors in judgment or discretion by the Contractor shall not constitute grounds for termination for Cause hereunder. In the event of a termination for Cause, the Company may by written notice immediately terminate this Agreement and, in that event, the Company shall be obligated only to pay the Contractor the compensation due him up to the date of termination, all accrued, vested or earned benefits under any applicable benefit plan and any other compensation to which the Contractor is entitled under Section 4 and 5 up to and ending on the date of the Contractor's termination. The restrictive covenants contained in this Agreement shall survive the termination of this Agreement, whether for Cause or otherwise, consistent with their respective terms.

8. **Confidentiality and Intellectual Property.** The Contractor recognizes that during the course of this Agreement he may acquire knowledge of confidential information or trade secrets. The Contractor agrees to keep all such confidential information in a secure place and not to publish, communicate, use or disclose, directly or indirectly, for his own benefit or for the benefit of another, either during or after contract performance, any such confidential business information or trade secrets. This obligation of confidence shall not apply to information that is (1) available to the Contractor from third parties on an unrestricted basis; or (2) is disclosed by the Company to others on an unrestricted basis.

Proprietary or confidential information includes, but is not limited to:

- The written, printed, graphic, or electronically recorded materials furnished by the Company for Contractor to use;

- Usernames, passwords, and other access credentials;

- Any written or tangible information stamped "confidential," "proprietary," or with a similar legend;

- Information that the Contractor knows or should know the Company makes reasonable efforts to maintain the secrecy of, including but not limited to business or marketing plans or strategies, customer lists, operating procedures, trade secrets, design formulas, know-how and processes, computer programs and inventories, discoveries, and improvements of any kind, sales projections, and pricing information; and

- Information belonging to customers and suppliers of the Company.

Upon termination or expiration of this Agreement, Contractor shall deliver all records, data, information, and other documents produced or acquired during the performance of this Agreement, and all copies thereof, to Company. Such material shall remain the property of the Company.

9. **Non-Solicitation of Clients.** During and for a period of two (2) years following the Term of this Agreement, or its Termination, the Contractor, its owners, agents, assigns, and/or affiliates shall not directly or indirectly attempt to solicit for the purposes of obtaining business or making sales, any person, firm, or corporation that received or purchased products or services from the Company during the Contractor's tenure with the Company for the purpose of selling similar or competing product and/or service.

10. **Non-Circumvention.** To protect Contractor's interests and rights in the Company, Company hereby covenants and agrees that the Company will not, by amendment of its certificate of

DMS 000022

incorporation, bylaws or through any reorganization, transfer of assets, consolidation, merger, scheme of arrangement, dissolution, issue or sale of securities, or any other action, avoid or seek to avoid its obligations to Contractor hereunder, and will at all times in good faith carry out all the provisions of this Agreement and take all action as may be reasonably required to protect the rights of the Contractor hereunder.

11. **Expenses and Advantages.** The Contractor will be responsible for all expenses and costs incurred in connection with the provision of services under this Agreement, except for those travel and business associated expenses approved by the Company which are subject to Company approval for reimbursement.

    The Contractor shall invoice monthly expenses incurred in the framework of his role for the Company. Expenses may include accommodation costs, plane tickets, and fuel for attending trade and consumer shows. The invoiced expenses shall be accompanied by documentation in the form of receipts (or similar documents) that verify the actual expense incurred and proof of payment with original bills or invoices and its direct relationship to the service Contractor is obligated to provide under this Agreement.

    As an independent contractor, the Contractor will be responsible for its own worker's compensation insurance, employer health tax, commercial general liability insurance, income tax contributions, and workplace safety, as well as all statutory or other deductions, taxes, premiums, or contributions related to the payments made hereunder, as well as the cost of any health benefits it may wish to secure for its own staff. The commercial general liability insurance required hereunder shall have a coverage limit of not less than one million ($1,000,000) per occurrence and three million ($3,000,000) annually. Contractor shall furnish to the Company at its demand verification that it has purchased the insurance required under this provision and that it has a currently effective and in force insurance policy consistent with the requirements hereof.

12. **Indemnity.** Each party agrees to indemnify and hold harmless the other, its officers and directors, employees and its affiliates and their respective successors and assigns and each other person, if any, who controls any thereof, against any loss, liability, claim, damage and expense whatsoever (including, but not limited to, any and all expenses whatsoever reasonably incurred in investigating, preparing or defending against any litigation commenced or threatened or any claim whatsoever) arising out of, related to, or based upon the services provided by applicable party pursuant this Agreement. Notwithstanding the foregoing, the Company shall not indemnify nor defend Contractor against any liability arising out of or relating to claims made against Contractor for a breach of pre-existing agreements with third parties. The duty to defend and indemnify for such claims shall be the sole responsibility of Contractor including any defending the Company against claims made or liability arising from the same

13. **Entire Agreement.** This Agreement represents the entire Agreement between the parties and the provisions of this Agreement shall supersede all prior oral and written commitments, contracts, and understandings with respect to the subject matter of this Agreement. This Agreement may be amended only by mutual written agreement of the parties.

14. **Assignment.** This Agreement shall inure to the benefit of and shall be binding upon each party's successors, heirs, executors and administrators, and permitted assigns. Neither party shall assign any right or obligation hereunder in whole or in part, without the prior written consent of the other party.

DMS 000023

15. **Governing Law and Principles of Construction.** This Agreement shall be governed and construed in accordance with Minnesota law. If any provision in this Agreement is declared illegal or unenforceable, the provision will become void, leaving the remainder of this Agreement in full force and effect.

16. **Audit.** Contractor shall have the right to appoint a certified public accountant ("CPA") to examine Company's books and records relating to the net profits and Commission hereunder, provided that such examination shall take place at Company's offices during normal business hours, on reasonable written notice, not more frequently than once in any calendar year, no more than once per Commission statement, and at Contractor's sole cost and expense (provided that Company will promptly reimburse Contractor for audit cost if such audit reveals a discrepancy of 5% or greater).

IN WITNESS WEREOF, the parties hereto have caused this Agreement to be executed by their duly authorized representatives, effective as of the day and year first written above.

Agreed To:

_____
Tactacell, LLC
An Authorized Signature
March 6, 2020

Agreed To:

Deer Management Systems, LLC

_____
By: Jeff Peel
Its: CEO

DMS 000024