UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

**TACTACELL, LLC**               CIVIL DOCKET NO. 6:22-cv-00773

**VERSUS**                       JUDGE DAVID C. JOSEPH

**DEER MANAGEMENT SYSTEMS,**     MAGISTRATE JUDGE DAVID J. AYO
**LLC, ET AL**

## MEMORANDUM RULING

Before the Court are three motions in the above-captioned matter, all filed by plaintiff Tactacell, LLC ("Tactacell"): (i) MOTION FOR CERTIFICATION FOR INTERLOCUTORY APPEAL [Doc. 339]; (ii) MOTION FOR CERTIFICATION FOR INTERLOCUTORY APPEAL [Doc. 347]; and (iii) MOTION TO REVIEW MAGISTRATE JUDGE'S RULING [Doc. 343] (the "Motions"). Each motion is opposed by Defendants Deer Management Systems, LLC and Tactacam, LLC (hereinafter, "DMS") [Docs. 345, 349 & 350, respectively], and Tactacell filed reply briefs. [Docs. 346, 351, & 352, respectively]. For the following reasons, Tactacell's Motions are DENIED.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

As set forth by this Court on numerous occasions, this lawsuit arises out of a failed business relationship between Tactacell and DMS. On March 6, 2020, Tactacell and DMS entered into a personal services contract entitled "Independent Contract Agreement" (hereinafter, "ICA") in which Tactacell agreed to provide services listed in Section 2 of the ICA to DMS. [Doc. 263-1]. After a period of time during which DMS believed Tactacell was no longer performing under the ICA, on June 10, 2021, DMS sent a letter to Tactacell by certified mail, purporting to terminate the ICA for

Page 1 of **12**

failure to provide "certain services under Section 2" of the ICA, and specifically terminating "for cause consistent with Section 7" of the agreement. [Doc. 263-5]. Subsequently, in March 2022, Tactacell filed a lawsuit against DMS,[1] asserting, *inter alia*, that the June 2021 termination was improper. [Doc. 1].

On July 15, 2024, the Court bifurcated the case, separating the question of whether DMS's June 10, 2021, purported termination of the ICA was proper from the remaining issues. The Court set a Phase I trial to address the discrete issue of whether DMS's termination of its ICA agreement with Tactacell, pursuant to Paragraph 7 of that Agreement, was legally effective under Minnesota law. [Doc. 186] (the "Bifurcation Order"). The parties went to trial on the bifurcated issue on October 2-4, 2024, and the jury returned a verdict in favor of Tactacell. [Doc. 261].

Approximately three months after the Phase I trial was completed, on January 8, 2025, Tactacell filed a motion seeking, *inter alia*, an order that the Phase I jury be re-empaneled for the Phase II trial, which has been set on March 23, 2026. [Docs. 270; 276]. Subsequently, on February 20, 2025, Tactacell filed a motion seeking leave of court to file a Second Amended Complaint, specifically seeking to amend Paragraph 110 of the First Amended and Supplemental Complaint to seek damages for DMS's alleged failure to offer Tactacell a right of first refusal as well as failing to provide a 3% commission relating to the sale of DMS. [Doc. 278-2]. The Magistrate Judge denied both motions, [Docs. 321 & 332, respectively], and this Court affirmed the Magistrate Judge's Jury Re-Empanelment Ruling. [Doc. 342] ("the Jury Re-

---

[1] Tactacam, LLC was added as a party defendant on May 17, 2023, by way of the plaintiff's First Amended and Supplemental Complaint. [Doc. 38].

Empanelment Motion/Ruling"). On June 23, 2025, DMS filed a Motion for Summary Judgment on Contract Terminability and Term ("the Contract Terminability Motion/Ruling"), which the Court granted [Doc. 331], concluding that the ICA has a term of indefinite duration, and therefore, the ICA is terminable at will upon reasonable notice to the other party after a reasonable time has passed. *Id.*, *citing Borg Warner Acceptance Corp. v. Shakopee Sports Ctr., Inc.*, 431 N.W.2d 539, 541 (Minn. 1988); *Benson Co-op. Creamery Ass'n v. First Dist. Ass'n*, 276 Minn. 520, 151 N.W.2d 422, 426 (1967) ("The general rule is that a contract having no definite duration, expressed or which may be implied, is terminable by either party at will upon reasonable notice to the other.").

In the instant Motions, Tactacell seeks to certify for immediate appeal both the Court's Jury Re-Empanelment Ruling and the ICA Terminability Ruling. Tactacell also appeals the Magistrate Judge's ruling denying its motion to amend complaint (the "Amendment Ruling"). All issues having been fully briefed by the parties, the Motions are now ripe for review.

## LAW AND ANALYSIS

### I.   Interlocutory Appeal

Pursuant to 28 U.S.C. § 1292, a court can allow for an interlocutory appeal of orders without directing entry of a final judgment on the order. Section 1292(b) is intended to "minimize[e] the total burdens of litigation on parties and the judicial system by accelerating or at least simplifying trial court proceedings." *Coates v. Brazoria Cnty. Tex.*, 919 F. Supp. 2d 863, 866 (S.D. Tex. 2013), *citing* 16 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3930 (3d ed. 2012). But

such appeals "represent a rarely used exception to the strong judicial policy disfavoring piecemeal appeals." *Coates*, 919 F. Supp. at 866. *See also Clark–Dietz & Assoc.-Eng'rs, Inc. v. Basic Constr. Co.,* 702 F.2d 67, 69 (5th Cir. 1983) ("Section 1292(b) appeals are exceptional.").

For an interlocutory order to be appealable pursuant to § 1292(b), three conditions must be satisfied: (i) a controlling question of law is involved; (ii) there is substantial ground for difference of opinion about the question of law; and (iii) immediate appeal will materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b); *see also Rico v. Flores*, 481 F.3d 234, 238 (5th Cir. 2007). Courts traditionally will find a substantial ground for difference of opinion "if a trial court rules in a manner which appears contrary to the rulings of all Courts of Appeals which have reached the issue, if the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented." *Gonzalez v. Seal,* 702 F.3d 785, 787–88 (5th Cir. 2012) (permitting appeal on issue of whether Fifth Circuit precedent survived a conflicting Supreme Court decision); *Fisher v. Halliburton,* 667 F.3d 602, 613–14 (5th Cir. 2012) (permitting appeal on issue of first impression under the Defense Base Act in which all relevant case law came from courts in other jurisdictions interpreting parallel statutes). At bottom, however, an interlocutory appeal is "exceptional" and "does not lie simply to determine the correctness of a judgment." *Clark-Dietz & Assoc.-Eng'r, Inc. v. Basic Const. Co.,* 702 F.2d 67, 68 (5th Cir. 1983).

A. **Motion to Certify Court's Jury Re-Empanelment Ruling for Interlocutory Appeal [Doc. 347]**

For the Court's Jury Re-Empanelment Ruling to be immediately appealable, Tactacell must first establish that the ruling "involves a controlling question of law as to which there is substantial ground for difference of opinion." 28 U.S.C. § 1292(b). Tactacell argues that it is entitled to the same jury for the Phase I and Phase II jury trials because, otherwise, the rights of Tactacell will be infringed under the Seventh Amendment if common issues of fact are considered by the two separate juries. Tactacell relies on *State of Ala. v. Blue Bird Body Co.*, 573 F.2d 309, 318 (5th Cir. 1978) for the proposition that the discharge of the Phase I jury must be rescinded and the Phase I jury must be re-empaneled in the Phase II trial because the Seventh Amendment guarantees litigants the right to have only one jury pass on a common issue of fact. Again, Tactacell requests this relief approximately three months *after* the Phase I jury was discharged.

Importantly, *Blue Bird* does not address the issue of rescission of a jury discharge at all. Rather, the case discusses, in part, the limitations of Rule 42(b) bifurcations on jury trials. In *Dietz v. Bouldin*, 579 U.S. 40, 41, 136 S. Ct. 1885, 1889, 195 L.Ed.2d 161 (2016), the Supreme Court enunciated the governing legal standard for rescission of jury discharge orders, confirming that a federal district court has a limited inherent power to rescind a jury discharge order and recall a jury in a civil case for further deliberations. 579 U.S. 40, 40, 136 S. Ct. 1885, 1888, 195 L.Ed.2d 161 (2016). In *Dietz*, the jury rendered a verdict, was discharged, and then was immediately recalled before all jurors except one left the building after the district

court judge realized an error in the verdict. 579 U.S. at 43. Discussing the inherent power of the court to rescind a jury discharge order, the Court explained that such power "must be carefully circumscribed, especially in light of the guarantee of an impartial jury that is vital to the fair administration of justice." *Id.* at 48. Expounding, the Court stated:

> The potential for taint looms even larger when a jury is reassembled after being discharged. While discharged, jurors are freed from instructions from the court requiring them not to discuss the case with others outside the jury room and to avoid external prejudicial information.

*Id. at* 48–49.

The Court prescribed that district courts shall take into account:

> … at least the following additional factors that can indirectly create prejudice in this context, any of which standing alone could be dispositive in a particular case. *First, the length of delay between discharge and recall. The longer the jury has been discharged, the greater the likelihood of prejudice.* Freed from the crucible of the jury's group decision making enterprise, discharged jurors may begin to forget key facts, arguments, or instructions from the court. In taking off their juror "hats" and returning to their lives, they may lose sight of the vital collective role they played in the impartial administration of justice. And they are more likely to be exposed to potentially prejudicial sources of information or discuss the case with others, even if they do not realize they have done so or forget when questioned after being recalled by the court. *How long is too long is left to the discretion of the district court, but it could be as short as even a few minutes, depending on the case.*

*Id.* at 49–50 (emphasis added).

Tactacell is asking the Court to re-empanel a jury that, by the time the Phase II trial begins, will have been discharged for more than a year and a half. As the Magistrate Judge explained, recalling a jury after an 18-month delay between trials is simply not feasible and, even if feasible, would not meet the Supreme Court's

standard set forth in *Dietz*. And while the Court understands Tactacell's newly-found Seventh Amendment argument, Tactacell fails to address its own failure to timely request retention of the jury, or the grave potential for prejudice even if this Court were empowered to recall the same jury. Without having either a practical remedy for the relief it requests or sufficient legal support, Tactacell falls well short of showing that this Court's ruling "involves a controlling question of law as to which there is substantial ground for difference of opinion." 28 U.S.C. § 1292(b). In short, the Court can conceive of no circumstances where Tactacell's requested relief would be proper.

Nor would the immediate appeal of the Jury Re-Empanelment Ruling materially advance the ultimate termination of the litigation. The Phase II trial is set on March 23, 2026, a mere six months away. As DMS points out, the median interval from filing a notice of appeal to a final decision from the Fifth Circuit is about 7.9 months. Consequently, the granting of the instant Motion would likely require a trial continuance and *delay* the litigation. Considering the foregoing, the Motion for Certification for Interlocutory Appeal [Doc. 347] is DENIED.

B. **Motion to Certify the Court's ICA Terminability Ruling for Interlocutory Appeal [Doc. 339]**

Tactacell similarly fails to establish that the Court's Terminability Ruling is immediately appealable. Here, Tactacell argues that the Court's ruling that the ICA is "terminable at will upon reasonable notice to the other party after a reasonable time has passed," [Doc. 331, p. 17], presents a controlling legal question with "widespread implications on the issues of termination, performance obligations, and

the scope of damages," as well as discovery, the admissibility of evidence, jury instructions, and expert analysis for the Phase II damages trial. [Doc. 339-1, p. 4]. But as DMS points out, Tactacell is not disputing the legal standard to be applied in this case. Indeed, all parties acknowledge that the correct legal standard to be applied to the issue of terminability of the ICA under Minnesota law is found in *Glacial Plains Coop. v. Chippewa Valley Ethanol Co., LLLP*, 912 N.W.2d 233, 235 (Minn. 2018). Rather, Tactacell merely argues that the Court incorrectly decided the facts of the case under *Glacial Plains*. In short, Tactacell disagrees with the Court's determination that the ICA is a terminable contract, but such disagreement fails to meet the standard for an interlocutory appeal. Nor has Tactacell established that an immediate appeal will materially advance the ultimate termination of the litigation, for the same reasons as discussed in the last section. Considering the foregoing, the Motion for Certification for Interlocutory Appeal [Doc. 339] is DENIED.

## II.   Appeal of Magistrate Judge's Amendment Ruling [Doc. 343]

On February 20, 2025, four months after the Phase I trial was complete, Tactacell sought leave to amend its Complaint to allege, for the first time, that DMS breached the ICA by failing to offer Tactacell a right of first refusal and failing to provide a 3% commission relating to the sale of DMS. [Doc. 278]. The Magistrate Judge denied the motion, concluding that the amendment would prejudice DMS given the age and procedural posture of the case, and, more importantly, that the amendment would be futile. [Doc. 332]. Tactacell appeals the ruling under Rule 72(a) of the Federal Rules of Civil Procedure, which allows a party to ask the district judge to review a magistrate court's ruling on a non-dispositive pretrial motion. This Court

must "consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." FRCP 72(a); 28 U.S.C. § 636(b)(1)(A).

Federal Rule of Civil Procedure 16(b) governs amendment of pleadings after a scheduling order's deadline to amend has expired. *Marathon Fin. Ins., Inc., RRG v. Ford Motor Co.*, 591 F.3d 458, 470–71 (5th Cir. 2009), *citing Fahim v. Marriott Hotel Servs., Inc.,* 551 F.3d 344, 348 (5th Cir. 2008). Rule 16(b) provides that once a scheduling order has been entered, it "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b). Rule 16(b) requires a party "to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *S&W Enters., LLC v. Southtrust Bank of Ala., NA,* 315 F.3d 533, 535 (5th Cir. 2003) (internal citations omitted). Four factors are relevant to good cause: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *Marathon*, 591 F.3d at 471, *citing Sw. Bell Tel. Co. v. City of El Paso,* 346 F.3d 541, 546 (5th Cir. 2003) (citing *S&W Enters.,* 315 F.3d at 536). Only upon the movant's demonstration of good cause to modify the scheduling order will the more liberal standard of Rule 15(a) apply to the district court's decision to grant or deny leave. *S&W Enters.*, 315 F.3d at 536.

Rule 16(b) governs the amendment issue in this case because the deadline for amendment of pleadings lapsed more than two years ago, on August 24, 2023. [Doc. 47]. Tactacell attempts to remedy its late filing by arguing that it did not learn of the transaction giving rise to the purported new claim until February 23, 2024. [Doc. 278, p. 3]. Even still, though, Tactacell did not move to amend its Complaint for

*another year*, in February 2025, *after* the Phase I trial was completed and *after* the related discovery and dispositive motions deadlines had lapsed. Tactacell provides no additional explanation or good reason for why it waited an entire year to amend its Complaint, instead focusing on the federal rules' "liberal" amendment standard. But the jurisprudence is clear, once an amendment deadline has lapsed, in order for the Court to construe a requested amendment liberally, the movant must have established good cause for his failure to amend. *S&W Enters.*, 315 F.3d at 536. Tactacell has not done that here. *See Marathon*, 591 F.3d at 471 (affirming trial court's decision to deny motion to amend where plaintiff waited 22 months after the deadline for amending pleadings and after the close of discovery, to amend complaint); *Lewis v. Knutson,* 699 F.2d 230, 239–40 (5th Cir. 1983) (district court did not abuse its discretion in denying leave to supplement where, *inter alia,* plaintiff moved to supplement five months after the occurrence giving rise to the proposed supplemental claim). Moreover, the Court finds that the prejudice to DMS would be significant, as the Court would be disinclined to further postpone resolution of this matter by granting a continuance of the Phase II trial date.

Tactacell's additional arguments are similarly without merit. Tactacell contends that it specifically alleged facts in both the Original and Amended Complaints that "put DMS on notice as to the relevance of a sale of DMS to Tactacell's claims." [Doc. 352, p. 2].[2] But review of these allegations belies Tactacell's argument.

---

[2] In its Original Complaint, Tactacell alleged that "[u]pon information and belief, Deer Management started to negotiate a sale of Deer Management and the Reveal Trail Camera in late 2020, early 2021." [Doc. 1, ¶ 29]. In its Amended Complaint, Tactacell alleged that "[u]pon information and belief, Deer Management and/or Tactacam started to negotiate a

The bare allegation that "negotiations" concerning a potential sale of DMS occurred provides no notice to DMS of the relevance of that fact to the larger personal services contract dispute that comprises the crux of this case, which has been pending for more than three and a half years. And to the extent that Tactacell is now attempting to allege that DMS breached the ICA by failing to offer Tactacell a right of first refusal and failing to provide a 3% commission relating to the sale of DMS, without providing any factual basis for the claim, the prejudice to DMS would be significant at this late stage of the litigation. "[A] bare bones motion to amend remains futile when it 'fail[s] to apprise the district court of the facts that [the movant] would plead in an amended complaint.'" *Edionwe v. Bailey*, 860 F.3d 287, 295 (5th Cir. 2017), *citing Gentilello v. Rege*, 627 F.3d 540, 546 (5th Cir. 2010). Here, despite having multiple opportunities to allege a factual or contractual basis for its right of first refusal damages, Tactacell has failed to do so.[3]

For the foregoing reasons, the Court concludes that the Magistrate Judge's Amendment Ruling is not clearly erroneous or contrary to law, and the Magistrate Judge's decision is therefore AFFIRMED.

---

sale of Deer Management and/or Tactacam and the Reveal Trail Camera in late 2020, early 2021." [Doc. 38, ¶ 35].

[3]     As DMS argues, Tactacell seeks to plead that the "failure to provide 3% commission relating to the sale of Defendants" is a "failure to abide by the terms of the Agreement," [Doc. 278-2, pp. 1–2], suggesting that there is a relevant provision in the ICA that provides the factual source for the damages claim. But Tactacell has also alleged that "Tactacell and DMS *orally* agreed on June 30, 2020, and again discussed on February 3, 2021, that if DMS was sold, Tactacell would be entitled to three percent (3%) of the profits of the sale." [Doc. 208, p. 8 (emphasis added)]; [Doc. 286, p. 8]. Although DMS pointed out this discrepancy in its briefing on the underlying motion, Tactacell has not explained it.

## **CONCLUSION**

Considering the foregoing, the following ORDERS are entered:

1. The Motion for Certification for Interlocutory Appeal [Doc. 339] is DENIED;

2. The Motion for Certification for Interlocutory Appeal [Doc. 347] is DENIED; and

3. The Motion to Review Magistrate Judge's Ruling [Doc. 343] is DENIED AND DISMISSED, and the ruling of the magistrate judge is AFFIRMED.

THUS, DONE AND SIGNED in Chambers on this 26th day of September 2025.

DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE